**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kellissa M. Strand,            ) | CIV-06-1373-PHX-MHB |
|                                ) | |
|     Plaintiff,                 ) | **ORDER** |
|                                ) | |
| vs.                            ) | |
|                                ) | |
| Jo Anne B. Barnhart, Commissioner of ) | |
| Social Security,               ) | |
|                                ) | |
|     Defendant.                 ) | |
|                                ) | |

Pending before the Court is Plaintiff Kellissa M. Strand's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act on September 19, 2001, alleging a disability onset date of January 1, 2000. (Transcript of Administrative Record ("Tr.") at 83-85.) The claim was denied initially and on reconsideration. (Tr. at 45-54.) She again filed for disability insurance benefits on August 20, 2002, alleging disability since January 1, 2001. (Tr. at 86-88.) The claim was denied initially. (Tr. at 55-57.) Plaintiff filed another application for disability insurance benefits on April 11, 2003, alleging disability since July 1, 2001. (Tr. at 89-92.) The claim was denied initially and on reconsideration. (Tr. at 58-70.) Plaintiff then filed an application for supplemental security income pursuant to Title XVI of the Social Security Act on

1  October 10, 2003. (Tr. at 98-101.) On November 4, 2003, Plaintiff requested a hearing on
2  the denial of the Title II disability insurance benefits claim. (Tr. at 71-72.) The Title XVI
3  supplemental security income claim was subsequently consolidated with the Title II claim.
4        On February 9, 2005, Administrative Law Judge ("ALJ") Joan G. Knight held a
5  hearing at which Plaintiff testified, represented by attorney Mark Caldwell. (Tr. at 1099-
6  1122.) At the hearing, Counsel amended the alleged disability onset date to January 1, 2001.
7  (Tr. at 1101.) Mark Kelman, a vocational expert, also testified.
8        On March 23, 2005, after taking the matter under advisement, the ALJ denied
9  Plaintiff's claims. (Tr. at 27-36.) The ALJ found that Plaintiff was disabled from January
10 1, 2001 through February 28, 2003, but that alcohol abuse was a contributing factor material
11 to her disability, thereby precluding her receipt of benefits under Public Law 104-121. (Tr.
12 at 32, 34-36.) The ALJ further found that as of March 1, 2003, Plaintiff's mental
13 impairments were no longer severe, absent the effects of alcohol abuse. (Tr. at 32, 34-36.)
14 Therefore, the ALJ determined Plaintiff not disabled. (Tr. at 34-36.) The Appeals Council
15 subsequently denied review, thereby rendering the ALJ's decision the final decision of the
16 Commissioner. (Tr. at 10-12.)
17       Plaintiff then commenced the instant action for judicial review pursuant to 42 U.S.C.
18 § 405(g). On October 5, 2006, Plaintiff moved for summary judgment. (Doc. #12.)
19 Defendant filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion
20 for Summary Judgment on November 7, 2006. (Doc. #16.) On June 1, 2007, the Court
21 entered a stay in this matter pursuant to Plaintiff's request. (Doc. #30.) The stay was
22 continued on December 26, 2007. (Doc. #32.) The Court has since been advised by the
23 parties that this matter be submitted for decision. (Doc. #33.)

## II. STANDARD OF REVIEW

25       The Court must affirm the ALJ's findings if the findings are supported by substantial
26 evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720
27 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence
28 means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

- 2 -

1  accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401
2  (1971); see Reddick, 157 F.3d at 720.

3        In determining whether substantial evidence supports a decision, the Court considers
4  the administrative record as a whole, weighing both the evidence that supports and the
5  evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ
6  is responsible for determining credibility, resolving conflicts in medical testimony, and for
7  resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see
8  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably
9  support either affirming or reversing the [Commissioner's] conclusion, the court may not
10 substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

12       In order to be eligible for disability insurance benefits or supplemental security
13 income, a claimant must demonstrate an "inability to engage in any substantial gainful
14 activity by reason of any medically determinable physical or mental impairment which can
15 be expected to result in death or which has lasted or can be expected to last for a continuous
16 period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a
17 claimant's eligibility for benefits by following a five-step sequential evaluation:

18       (1) determine whether the applicant is engaged in "substantial gainful activity";

19/20       (2) determine whether the applicant has a medically severe impairment or combination of impairments;

21/22       (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

23/24       (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

25/26       (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

27 See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § 404.1520). At the
28 fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can

1 perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.
2 1993).

3 When substance abuse is involved, however, this five-step process may not be enough
4 to resolve the disability claim. In 1996, specific amendments were added to the Social
5 Security Act providing that "[a]n individual shall not be considered to be disabled ... if
6 alcoholism or drug addiction would ... be a contributing factor material to the
7 Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).
8 Thus, even if the ALJ finds that all of the claimant's limitations are disabling, if there is
9 medical evidence of substance abuse, the ALJ must next determine whether the substance
10 abuse was a contributing factor material to the disability determination. See 20 C.F.R. §
11 404.1535(a). In substance abuse cases, therefore, a finding of "disabled" under the five-step
12 sequential process does not automatically result in an award of benefits. See Bustamante v.
13 Massanari, 262 F.3d 949, 954-55 (9th Cir. 2001) (holding that a finding of disability as to all
14 impairments is a prerequisite to evaluating the materiality of the claimant's substance abuse).

15 After finding the claimant disabled when considering all impairments, the ALJ must
16 then determine which of the claimant's "current physical and mental limitations" would
17 remain if she "stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(2). The Ninth
18 Circuit has described this step as "separating out the impact" of the substance abuse. See
19 Bustamante, 262 F.3d at 955. As with any other aspect of her decision, the ALJ's finding
20 must be supported by substantial evidence. See Thomas v. Barnhart, 278 F.3d 947, 954.

21 If the ALJ is able to separate out the impact of substance abuse, the ALJ must then
22 determine whether the claimant's remaining limitations would be disabling. See Bustamante,
23 262 F.3d at 955. To make this determination, the ALJ repeats the five-step sequential
24 process described above but only analyzes the claimant's non-substance-abuse-related
25 limitations when doing so. See id. If the non-substance-abuse-related limitations would be
26 disabling, then the claimant is entitled to benefits. If the non-substance-abuse-related
27 limitations would not be disabling, then the claimant's substance abuse is a contributing
28

1   factor material to the disability determination, and the claimant is not entitled to receive
2   benefits.  See id.

3         The ALJ found that Plaintiff had not engaged in "substantial gainful activity" since
4   the alleged amended onset date.  (Tr. at 35.)  The ALJ determined that from January 1, 2001
5   through February 28, 2003, Plaintiff's bipolar disorder, borderline personality disorder, and
6   alcohol abuse were considered "severe" based on the requirements set forth in the
7   Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).  (Tr. at 35.)  The ALJ stated that these
8   medically determinable impairments met one or more of the listed impairments in Appendix
9   1, Subpart P, Regulation No. 4.  (Tr. at 35.)  Accordingly, when considering Plaintiff's drug
10  addiction and/or alcoholism ("DA&A") from January 1, 2001 through February 28, 2003,
11  the ALJ concluded that Plaintiff was "disabled."  (Tr. at 35.)

12        Absent Plaintiff's DA&A during this time period, however, Plaintiff did not have any
13  impairment or combination of impairments that significantly limited her ability to perform
14  basic work-related activities.  (Tr. at 35.)  Therefore, the ALJ found that Plaintiff did not
15  have "severe" impairment, and that from January 1, 2001 through February 28, 2003,
16  Plaintiff's DA&A was a contributing factor material to the determination of her disability.
17  (Tr. at 35.)

18        The ALJ also stated that since Plaintiff's DA&A has been in remission (March 1,
19  2003), Plaintiff has failed to establish the existence of any "severe" impairment under the
20  Regulations. (Tr. at 35.)  Accordingly, the ALJ determined that Plaintiff has not been under
21  a "disability" as defined in the Social Security Act at any time through the date of her
22  decision.  (Tr. at 35.)

23        **IV.  DISCUSSION**

24        Plaintiff first contends that the ALJ erred by concluding that alcoholism was a factor
25  material to a finding of disability.  Next, Plaintiff asserts that the ALJ erred by (1) finding
26  Plaintiff's impairments not "severe" within the meaning of the regulations after March 2003;
27  (2) rejecting the treating psychiatrist's assessment; and (3) relying on assessments of non-
28  testifying non-examining State agency physicians.  Lastly, Plaintiff alleges that the ALJ erred

by finding that Plaintiff's "subjective complaints and allegations are embellished and exaggerated and, therefore, not credible" without providing clear and convincing reasons.

### A. Whether the ALJ erred by concluding that alcoholism was a factor material to a finding of disability

Plaintiff first argues that the ALJ erred by concluding that alcoholism was a factor material to a finding of disability. Plaintiff appears to challenge the ALJ's finding that she had a disability for over a two year period based on alcoholism. Plaintiff seems to contend that by erroneously finding her impairments not severe since March 2003, the ALJ necessarily erred by finding alcoholism material to her disability prior to March 2003.

As previously set forth, when a claimant's substance abuse is a contributing factor material to the determination of disability, that claimant is ineligible for benefits. See 42 U.S.C. § 423(d)(2)(C). This issue only arises when, as in this case, the ALJ first determines that the claimant is disabled and there is evidence of substance abuse. See 20 C.F.R. § 404.1535(a). The key to making the materiality determination is whether the claimant would remain disabled if she stopped using drugs or alcohol. See 20 C.F.R. §§ 404.1535(b). The claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination. See Parra v. Astrue, 481 F.3d 742, 747-48 (9th Cir. 2007).

The ALJ, after consideration of the entire record, concluded that:

> In summary, from January 1, 2001 through February 28, 2003, the claimant was "disabled" based on a combination of her mental impairments, including DA&A. During this same period, however, absent the claimant's DA&A, the claimant's mental impairments were no longer severe. Thus, her alcohol abuse was a contributing factor material to the determination of her disability for this part of the adjudicatory period. Since the claimant's DA&A has been in remission (March 1, 2003), the claimant has failed to establish the existence of any "severe" impairment under the Regulations. A finding of "not disabled" is therefore appropriate under the Social Security Act.

(Tr. at 34.)

In considering whether Plaintiff would remain disabled if she stopped using drugs or alcohol, the ALJ first addressed Plaintiff's subjective complaints and allegations and found them embellished, exaggerated and, therefore, not credible. (Tr. at 33.) The ALJ concluded

1  that Plaintiff had undergone multiple attempts at detoxification for alcoholism and, yet, she
2  had not been entirely truthful regarding her drinking problem. (Tr. at 33.) For example, the
3  ALJ stated that "on April 1, 2003, [Plaintiff] told her counselor at Value Options that she had
4  not been drinking for 45 days (exhibit 45F/45). Yet, she told another team member at Value
5  Options, on March 15, 2003, that she drank a bottle of wine that very morning." (Tr. at 33.)
6  "This counselor reported that [Plaintiff] was using alcohol frequently and was 'not making
7  any progress towards any goals' (exhibit 45F/50)." (Tr. at 33.)  The ALJ again found
8  documented evidence of relapse in September 2003, even though Plaintiff testified that she
9  had been sober since March 2003, and also found evidence of Plaintiff not complying with
10 her medication regimen which further undermined Plaintiff's credibility. (Tr. at 33-34.)

11         The ALJ determined, however, that after being incarcerated in 2003, Plaintiff was
12 placed on a 60-day work release program and was required to undergo substance abuse
13 counseling and perform community service for four hours a day. (Tr. at 33.) The ALJ stated
14 that this work activity occurred 2-3 days a week and lasted for two years, indicating that
15 when sober Plaintiff can sustain a work routine. (Tr. at 33.) The ALJ noted that "with her
16 DA&A in remission, [Plaintiff's] [Global Assessment of Functioning] has consistently been
17 estimated to be 50 or higher (exhibit 53F)." (Tr. at 34.)

18         The ALJ also considered findings made by the State agency reviewing physicians and
19 consultants (Tr. at 434-447; 448-465; 556-559; 574-578; 643-660; 1005-1008; 1009-1022)
20 regarding the nature and severity of Plaintiff's impairments. (Tr. at 34.)  Specifically, the
21 ALJ stated that in February and October of 2002, State agency psychologist Jane George,
22 Ph.D., determined that unless sobriety is attained, Plaintiff will not be competitively
23 functional. (Tr. at 34.) The ALJ found that this same consultant concluded that if Plaintiff
24 were sober, she could complete a 40-hour work week satisfactorily. (Tr. at 34.) The record
25 contains a report submitted by a second medical consultant (signature not legible) who
26 reviewed Dr. George's October 2002 psychiatric review technique form evaluation. (Tr. at
27 574-578.) The reviewer agreed with Dr. George's overall opinion. (Tr. at 577.)

28

1  The ALJ also examined the findings of State agency psychiatrist Wayne F. Winn, M.D. (Tr. at 34.) Dr. Winn found that Plaintiff's affective disorder met the criteria for sections 12.04 and 12.09 of the Listing of Impairments. (Tr. at 34.) Dr. Winn opined, however, that "[t]here is no evidence to support a disabling mental impairment in a sober state." (Tr. at 446.) Likewise, State agency psychologist Larry Waldman, Ph.D., (Tr. at 643-660), concluded in June of 2003, that Plaintiff was disabled, but that the disability was "definitely" due to alcohol addiction. (Tr. at 659.)

In October of 2003, approximately seven months after Plaintiff's sobriety, State agency psychologist Francis A. Enos, Ph.D., opined that Plaintiff had no or only "mild" limitations in work-related mental activities. (Tr. at 34.)

With respect to the opinions and assessments of each State agency consultant, the ALJ determined that "[t]aken together, these opinions are assigned substantial weight because they are consistent with the general weight of the medical evidence and findings [set forth in her decision]." (Tr. at 34.)

The ALJ makes several references to Plaintiff's hospital records, which consistent with the State agency reviewing physicians and consultants, illustrate a history of alcohol abuse (Tr. at 532, 854, 862, 873, 962, 975) and support the inference of non-disabling limitations if Plaintiff stopped drinking. For example, the ALJ stated:

> The medical evidence of record shows [that Plaintiff] was admitted to the hospital on December 31, 2000. She was diagnosed with alcohol dependency syndrome and bipolar disorder. [Plaintiff] also was dehydrated and had alcoholic lever disease. Her Global Assessment of Functioning (GAF) was estimated to be 35-45 (exhibit 11F). Since this time and March 2003, [Plaintiff] had multiple hospital admissions for alcohol abuse/dependence. Her medical record during this period also references numerous diagnoses of bipolar disorder/depression (i.e. exhibit 17F). However, there is no evidence of any severe mental impairment when [Plaintiff] is sober (See exhibit 48F).

(Tr. at 32.) The record also contains evidence that Plaintiff was not consistently compliant with her psychiatric treatment and that, at least at times, her not being compliant with her medications was associated with drinking. (Tr. at 279, 470, 497, 520, 524.) For instance, a December 2000 hospital record stated, "[c]onsequences from alcohol abuse include difficulty with compliance with bipolar medication," and that Plaintiff felt so well on her

- 8 -

1  medications that she stopped taking them. (Tr. at 279.) When her symptoms flared up, she
2  began drinking. (Tr. at 279.) An October 2004 report indicated that Plaintiff had a "history
3  of sporadic compliance with her medications and clinical appointments. Her alcohol abuse
4  has been a factor as well." (Tr. at 1050.)

These examples demonstrate that Plaintiff's alcohol abuse exacerbated her mental symptoms. As exemplified on one occasion in September 2002, Plaintiff's discharge notations indicated "decrease in depressed [symptoms][,] no longer intoxicated[,] completed detox[,] petition dropped[.]" (Tr. at 522.)

In sum, while the Court accepts that Plaintiff had limitations, she has not demonstrated that her limitations would be disabling in the absence of alcohol use. To the contrary, the evidence indicates that if Plaintiff stopped using alcohol her mental deficits would not be disabling. Therefore, the Court finds that the ALJ's conclusion that alcohol use is a material contributing factor is supported substantial evidence.

**B.  Whether the ALJ erred by: (1) finding Plaintiff's impairments not "severe" within the meaning of the regulations after March 2003; (2) rejecting the treating psychiatrist's assessment; and (3) relying on assessments of non-testifying non-examining State agency physicians**

Plaintiff alleges that the ALJ erred in finding that she suffered no severe impairments in the absence of alcoholism – a finding reached only by improperly rejecting her treating psychiatrist's assessment and relying the opinions of the State agency reviewing physicians and consultants.

"The Social Security Regulations and Rulings, as well as case law applying them, discuss the ... severity determination in terms of what is 'not severe.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a)). Consistent with the Commissioner's own ruling, SSR 85-28, 1985 WL 56856 (1985), "courts have imposed a narrow construction upon the severity regulation ... ." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citations omitted). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v.

- 9 -

1 Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen, 80 F.3d at 1290) (emphasis
2 original); see Yuckert, 841 F.2d at 306.

3       Plaintiff points to the opinion of her treating psychiatrist, Sonia Godbole, M.D., to
4 show that she had limitations that "far exceed[ed] the de minimis test of step two."

5       It is well established in this Circuit that a treating physician's opinions are entitled to
6 special weight, because a treating physician is employed to cure and has a greater opportunity
7 to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599,
8 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive
9 as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d
10 at 751. The weight given a treating physician's opinion depends on whether it is supported
11 by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R.
12 §§ 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor,
13 it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d
14 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where, as
15 here, the treating physician's opinion is controverted, it may be rejected only if the ALJ
16 makes findings setting forth specific and legitimate reasons that are based on the substantial
17 evidence of record. See Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647
18 (9th Cir. 1987).

19       The ALJ noted that Dr. Godbole provided a medical source statement dated February
20 3, 2005, and that she had been seeing Plaintiff once a month for 15 months primarily for
21 medication refills. (Tr. at 34.) In her assessment, Dr. Godbole found that Plaintiff had
22 "moderate" impairment in deterioration of personal habits; understanding, carrying out, and
23 remembering instructions; responding appropriately to supervision; and performing simple
24 or repetitive tasks. (Tr. at 1097-1098.) Dr. Godbole also found that Plaintiff suffered
25 "moderately severe" limitation in abilities to relate to other people; restriction of daily
26 activities; constriction of interests; ability to respond appropriately to co-workers; ability to
27 respond to customary work pressures; and ability to perform complex or varied tasks. (Tr.
28

1    at 1097-1098.) As set forth by the ALJ, Dr. Godbole opined that Plaintiff was having trouble
2    maintaining employment due to her mental impairments. (Tr. at 34.)

3    The ALJ concluded, however, that Dr. Godbole based her assessments on Plaintiff's
4    own statements of symptoms related to her alcohol abuse – not on her own professional
5    observations of Plaintiff's behavior and general medical condition. (Tr. at 34.) As an
6    example, Dr. Godbole's writes in her notes that "[Plaintiff] *states* she has anxiety, vomiting
7    [and] headaches when working" and "*states* she was sleeping 12 hrs/night [and] keeping to
8    herself when did work briefly." (Tr. at 1098) (Emphasis added.)

9    The ALJ also determined that Plaintiff's description of her symptoms after March 1,
10   2003, was not consistent with her own counselor's notes indicating that Plaintiff was ready
11   for employment and ready to live independently in June/July 2003. (Tr. at 34.) The ALJ
12   cites specifically to a report issued by Plaintiff's case manager, Susan Tingley, who found
13   that although "[Plaintiff] was frustrated about the process she must go through to obtain
14   housing ... [s]he was presenting well and is ready to get a job and her own place. She has
15   never lived by herself before and is nervous at the thought of it but still excited. ... [Plaintiff]
16   will be released 7/2/03 from jail and begin[s] looking for a job at that time." (Tr. at 702.)
17   The record contains several reports from Ms. Tingley in mid-July of 2003 stating, "[Plaintiff]
18   was in a good mood and presenting well. She had applied for a job earlier in the day and had
19   an interview. ... [Plaintiff] is still looking for a job independently. She has not drank for
20   several months. ... [Plaintiff] has actively been looking for a job. She has had several
21   interviews and a couple second interviews." (Tr. at 678-679.)

22   In evaluating and ultimately rejecting Dr. Bodbole's opinion, the ALJ also relied on
23   the assessments of the State agency consultants. Plaintiff complains that the ALJ erred by
24   relying on the assessments of the State agency consultants because they did not testify at the
25   hearing, they did not offer explanations for their conclusions, and they did not articulate a
26   review of all the evidence of record. Plaintiff, however, ignores the Commissioner's
27   regulations, which specifically acknowledge the expertise and importance of the State agency
28   consultants' assessments. See 20 C.F.R.§§ 404.1527(f)(2)(i) (State agency psychological

1  consultants are highly qualified physicians who are experts in Social Security disability).  As
2  set forth previously in this decision, a psychiatrist (Dr. Winn) and three psychologists (Drs.
3  George, Waldman, and Enos), as well as a fifth reviewing medical consultant, all essentially
4  reached the same conclusion – that Plaintiff was disabled due primarily to alcoholism and
5  that, if sober, she could work.  (Tr. at 34.)

6  For example, and as previously illustrated, the ALJ noted that State agency
7  psychologist Dr. Enos opined in October 2003, after several months of Plaintiff's sobriety,
8  that Plaintiff had only "mild" limitations.  (Tr. at 34, 1009-1022.)  Dr. Enos stated that
9  "[Plaintiff] has worked as secretary [and] still retains intellectual [and] social skills necessary
10 for similar work.  She can do personal planning[,] interact with peers[,] public[,] [and]
11 supervisors [and] work within a routine work week[.]" (Tr. at 1007.)

12 The opinions and assessments of the State agency reviewing physicians and
13 consultants were supported by other evidence.  Not only did the ALJ find that Plaintiff was
14 "presenting well" and "ready to get a job" in June 2003, according to the Value Options case
15 manager's note (Tr. at 32, 702), but Plaintiff was taking classes as part of her treatment (Tr.
16 at 1083) and indicated that she wanted to further her education and career; she was looking
17 at the highest paying positions.  (Tr. at 1054, 1055.)  There is also evidence that Plaintiff was
18 able to take care of daily living activities; she cooked, cleaned, shopped, and at times, cared
19 for her mother who was ill.  (Tr. at 1053, 1054.)  A counselor even indicated that Plaintiff
20 was capable of accessing services; "[i]f she does not feel she is being heard she has contacted
21 customer service to deal with any issues.  She is aware of her rights as a consumer and has
22 utilized the grievance and appeals process in more than one system."  (Tr. at 1053.)

23 In addition, since stopping alcohol, many of Plaintiff's mental status examinations and
24 appearance/presentation were intact, despite some persisting symptoms.  (Tr. at 678-679,
25 707, 712, 715, 1045, 1064, 1083, 1086.)  Not only did Ms. Tingley report that Plaintiff was
26 "in a good mood and presenting well" (Tr. at 679), but in May 2004, Plaintiff's appearance
27 was good, she was alert, oriented, and cooperative with intact memory and judgment.  (Tr.
28 at 1064.)  Despite a depressed mood and blunted affect, her speech and motor activities were

1  normal, and she denied psychotic symptoms. (Tr. at 1064.) In December 2004, Plaintiff's
2  appearance was good, she was alert and cooperative, and her speech and activities were
3  normal. (Tr. at 1045.) Her affect was appropriate, her memory and judgment were intact,
4  and she denied psychotic symptoms. (Tr. at 1045.)

5  The Court finds that the ALJ's determination that Plaintiff's impairments were not
6  "severe" within the meaning of the Regulations and case law of this Circuit after March 2003
7  was supported by substantial evidence. The ALJ provided specific and legitimate reasons
8  for rejecting Dr. Godbole's assessment and properly relied on the opinions of the State
9  agency consultants as well as the other evidence of record. The ALJ's finding, as one
10 reasonable interpretation, must be upheld. See Rollins v. Massanari, 261 F.3d 853, 857 (9th
11 Cir. 2001).

**C.  Whether the ALJ erred by finding that Plaintiff's "subjective complaints and allegations are embellished and exaggerated and, therefore, not credible" without providing clear and convincing reasons**

14 Plaintiff alleges that the ALJ erred in finding that her subjective complaints were not
15 credible. Plaintiff contends that the ALJ did not support her findings by providing clear and
16 convincing reasons.

17 The ALJ is responsible for determining credibility. See Magallanes, 881 F.2d at 750.
18 When deciding whether to accept the subjective testimony of a claimant, the ALJ must
19 perform a two-part analysis. In the first part, the claimant must (1) produce objective
20 medical evidence of one or more impairments; and (2) show that the impairment or
21 combination of impairments could reasonably be expected to produce some degree of
22 symptom. See Smolen, 80 F.3d at 1281. The claimant is not required to produce objective
23 medical evidence of the symptom itself, the severity of the symptom, or the causal
24 relationship between the medically determinable impairment and the symptom. See id. at
25 1282. Rather, the claimant is only required to show that the impairment could reasonably
26 have caused some degree of the symptom. See id.

27 In the second stage of the analysis, the ALJ must assess the credibility of the
28 claimant's testimony regarding the severity of the symptoms. If there is no affirmative

1 evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes
2 specific findings, stating clear and convincing reasons for the rejection. See id. at 1283-84.

> To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13.

8 Id. (internal citations omitted).

9 "Where ... the ALJ has made specific findings justifying a decision to disbelieve an
10 allegation ... and those findings are supported by substantial evidence in the record, our role
11 is not to second-guess that decision." Morgan v. Commissioner of the Soc. Sec. Admin., 169
12 F.3d 595, 600 (9th Cir. 1999).

13 In concluding that Plaintiff's "subjective complaints and allegations [were]
14 embellished and exaggerated and, therefore, not credible," the ALJ observed inconsistencies
15 between Plaintiff's subjective complaints, her own testimony, and the greater objective
16 record. (Tr. at 33-34.)

17 As stated previously, the ALJ noted that on April 1, 2003, Plaintiff told a Value
18 Options provider that she had quit drinking 45 days ago, but that on March 15, 2003, she
19 admitted to drinking a bottle of wine that morning. (Tr. at 33, 715, 719-720.) The ALJ also
20 found that Plaintiff was not consistently compliant with her medications. (Tr. at 34, 470,
21 497, 524, 771.) The Value Options evaluation dated October 2004 indicated that Plaintiff
22 had a history of sporadic compliance with medication and clinical appointments. (Tr. at
23 1050.) On the other hand, Plaintiff also admittedly demonstrated drug seeking behavior with
24 several trips to the emergency department and obtained prescriptions for narcotics from
25 different doctors. (Tr. at 1050, 669.)

26 The ALJ determined that Plaintiff was able to attend to her daily activities
27 independently. (Tr. at 33, 1053-1054, 1059.) She was able to cook, clean, shop, pay her
28 bills, help her mother, attend church, and had looked for work and attended classes. (Tr. at

1  664, 678-679, 702, 1053-1054, 1059, 1064, 1083.)  Plaintiff had also worked at a food bank
2  four hours a day, 2-3 days a week "[o]ff and on for two years."  (Tr. at 33, 1114.)

3  Plaintiff argues that the factors noted by the ALJ do not detract from her credibility.
4  Evidence that Plaintiff has been untruthful and/or not compliant with treatment, however, is
5  directly relevant to credibility.  Plaintiff also argues that she "admitted" her daily activities
6  and indicated that said activities are limited.  Here, Plaintiff testified that she slept 3-4 hours
7  during the day, that she spent "a lot of time in bed," and that she can only be out of the house
8  a certain amount of time before she almost got psychotic.  (Tr. at 1106, 1113, 1116.)
9  Evidence of Plaintiff's food bank work, her ability to do house chores, shop, attend church,
10 help her mother, and attend job interviews conflicts with Plaintiff's testimony.

11 In summary, the ALJ provided a sufficient basis to find Plaintiff's allegations not
12 credible, including: evidence of Plaintiff's daily activities and inconsistencies between
13 Plaintiff's subjective complaints, her own testimony, and the greater objective record.  While
14 perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's
15 decision to discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall
16 analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision.
17 The Court concludes that the ALJ has supported her decision to discredit Plaintiff's
18 allegations with specific, clear and convincing reasons and, therefore, the Court finds no
19 error.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

- 15 -

**CONCLUSION**

The Court finds that the ALJ properly concluded that Plaintiff is not disabled. Based upon the foregoing discussion,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #12) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. #16) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 19th day of November, 2008.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge